UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AMERICAN CLASSICS OF LAKEWOOD, LLC, et al.,** | Civil Action No. 22-5382 (GC)(JTQ) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| **DANIEL BUCHANAN, et al.,** | |
| Defendants. | |

The recipients of third-party subpoenas—Latrecia Littles-Floyd ("Littles-Floyd"), Michael P. Rutherford, Gregory D. Focarino, Brittni V. Pizzarelli, Tamika M. Day, Tavia S. Kelly, Christopher Hillmann, James S. Walker, George P. Kinczel, Andre M. Bethea, and Ernest F. DiStefano (collectively, "MVC Employees") (collectively with Littles-Floyd, "Third Parties")—filed a motion to quash subpoenas that were served on them. ECF No. 61. On June 2, 2025, Plaintiffs American Classics of Lakewood, LLC ("ACL"), American Classics of Lakewood IV, LLC ("ACL IV"), and John Patel ("Patel") (collectively, "Plaintiffs") filed a Cross-Motion to Compel and Disqualify Counsel under Fed. R. Civ. P. 11. ECF No. 73. The Court has fully reviewed the submissions of the parties and addresses the motions without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, the Third Parties' Motion is GRANTED and Plaintiffs' Cross-Motion is DENIED.

I. **BACKGROUND**[1]

    A. **Allegations in the Complaint**

Plaintiffs own and manage several properties throughout New Jersey, many of which are leased to used car dealerships. Compl. ¶ 3. This matter arises out of Defendants' Daniel Buchanan ("Buchanan"), Theodore Lefkowich[2] ("Lefkowich"), and the New Jersey Motor Vehicles Commission (the "MVC") denial of used car dealer licenses to Plaintiffs.

In 2017, MVC investigators Buchanan and Lefkowich were assigned to conduct routine inspections of Plaintiffs' properties and review the related licensing applications. *Id.* ¶¶ 31-32. Buchanan and Lefkowich denied multiple license applications connected to Patel's properties. *Id.* ¶ 34. Plaintiffs allege that Buchanan and Lefkowich made false, reckless, and malicious statements to Plaintiffs' existing clients, stating, among other things, that Patel is dishonest, engages in fraudulent business practices, and, at that time, was the subject of an ongoing criminal investigation. *Id.*

In 2018, Plaintiffs filed suit in New Jersey Superior Court against Buchanan and Lefkowich, asserting claims for interference with contractual relations, trade disparagement, and economic harm. *Id.* ¶¶ 36-37. The parties entered into a settlement agreement on February 7, 2020 whereby Buchanan and Lefkowich were

---

[1] The following facts are taken from Plaintiffs' Complaint, ECF No. 1 ("Compl."), and are assumed true for the purposes of this decision.

[2] Defendant Lefkowich is mistakenly identified as Theodore "Lefkowitz" in the Complaint. Compl. ¶ 6.

barred from inspecting or reviewing applications for any properties owned by Plaintiffs until February 7, 2021. *Id.* ¶¶ 38-41.

Following that exclusionary period, Buchanan and Lefkowich resumed oversight of Plaintiffs' properties. *Id.* ¶ 47. From October 2021 onward, Buchanan and Lefkowich denied sixteen separate license applications, each of which Plaintiffs allege met all regulatory requirements and were otherwise satisfactory. *Id.* ¶¶ 48-49. Plaintiffs further claim that Buchanan and Lefkowich have again made disparaging comments regarding Patel's character, accusing him of "dropp[ing] envelopes to state officials," to imply bribery. *Id.* ¶ 68.

Plaintiffs filed the instant federal action in 2022 under 42 U.S.C. § 1983, raising First Amendment retaliation and selective enforcement claims. *Id.* ¶ 77. Plaintiffs' suit against the MVC was dismissed on sovereign immunity grounds, and the only claims that remain are the First Amendment retaliation claims. ECF No. 21.

### B. Plaintiffs' Attempts to Depose Third-Party Witnesses and to Disqualify Counsel

On February 21, 2025, Plaintiffs served *Subpoenas Duces Tecum and Testificandum* ("Subpoenas") requiring the Third Parties to appear for a deposition and to produce certain documents. On March 18, 2025, the New Jersey Office of the Attorney General ("OAG") acknowledged service of the Subpoenas on the Third Parties. *See* ECF No. 73, Ex. N. That same day, the OAG lodged a formal objection to the Subpoena served on Littles-Floyd under Fed. R. Civ. P. 45(d)(2)(B), arguing it was vague and overbroad. *Id.* The objection made no reference to the Subpoenas served on other MVC Employees.

3

On April 18, 2025, Plaintiffs sent the OAG two letters. Plaintiffs' first letter requested that the OAG withdraw as counsel. According to Plaintiff, the OAG's prior representation of Defendants created an unwaivable conflict of interest of the Third Parties here.[3] *Id.*, Ex. O. The second letter advised the OAG that their objection to the Subpoena was without merit. *Id.*, Ex. P. The Parties met and conferred on April 24, 2025, which resolved nothing.

The OAG promptly filed the instant motion. Plaintiffs' cross-motion followed shortly thereafter.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs the issuance, service, and enforcement of subpoenas. If the information sought falls within the scope of permissible discovery, then a party may serve a subpoena on a third party to obtain documents, testimony, and/or other information. *See* Fed. R. Civ. P. 45(c). Rule 26(b)(1) sets forth scope of permissible discovery. *See In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021). Pursuant to Rule 26,

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

---

[3] In this matter, Defendants were initially represented by the OAG. However, the OAG notified the Court of its intent to withdraw as attorney on February 18, 2025. ECF No. 53. Private counsel substituted into the matter on March 4, 2025. ECF No. 56.

4

Clearly, "Rule 26 establishes a liberal discovery policy." *S.M. v. Tamaqua Area Sch. Dist.*, 2023 WL 3689607, at *1 (M.D. Pa. May 26, 2023). And federal courts have "discretion to manage discovery[.]" *Resser v. J.B. Hunt Transp., Inc.*, 2022 WL 1240859, at *1 (M.D. Pa. Apr. 27, 2022) (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995); *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999)). However, courts should not allow discovery to "serve as a fishing expedition." *Saller v. QVC, Inc.*, 2016 U.S. Dist. LEXIS 82895, at *5 (E.D. Pa. June 24, 2016). To that end, if the requests do not fall within the permissible scope of discovery under Rule 26, the subpoena may be quashed or modified. *Schmulovich v. 1161 Rt. 9 LLC*, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007); *see also* Fed. R. Civ. P. 45(d)(3).

### III.   ANALYSIS

#### A.   The Motion to Quash and The Cross-Motion to Compel

The Third Parties argue that the Subpoenas should be quashed on multiple grounds. The Third Parties contend that the *Morgan* doctrine prohibits the deposition of Littles-Floyd, who serves as the Chief Administrator of the MVC. The Third Parties also maintain that the Subpoenas should be quashed because they improperly seek documents belonging to the MVC, which was not subpoenaed. Finally, the Third Parties argue that the Subpoenas must be quashed because they are unduly burdensome and duplicative with respect to both the testimony and documents sought by Plaintiffs. Plaintiffs dispute these arguments and ask that the Court compel the Third Parties to respond to the Subpoenas, produce the requested documents, and appear for depositions. The Court addresses each argument in turn.

### i. The *Morgan* Doctrine

Littles-Floyd argues that as the Chief Administrator of the MVC, her deposition is precluded by the "*Morgan* doctrine." Littles-Floyd is correct.

In *United States v. Morgan*, the Supreme Court ruled that the Secretary of Agriculture—who had previously conducted quasi-judicial proceedings in connection with certain rate settings—should not be required to testify about his mental deliberations. *United States v. Morgan*, 313 U.S. 409, 421-22 (1941). The Supreme Court found such an inquiry would be as improper as an examination to that into deliberative process of a judge. *Id.* at 422 ("Just as a judge cannot be subjected to such a scrutiny, . . . so the integrity of the administrative process must be equally respected."). *Morgan* thus stands for the proposition that high-ranking government officials should not be subject to the taking of depositions absent extraordinary circumstances." *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 316 (D.N.J. 2009). Accordingly, district courts must "balance the need for broad discovery with the need to protect high-ranking government officials from nettlesome deposition taking." *Id.* at 321.

But who qualifies as such an official and what constitutes extraordinary circumstances has been the subject of much judicial writing, with courts articulating different rationales for the doctrine, including protecting the decision-making process of officials, ensuring officials are able to perform their official tasks without disruption, and avoiding discouraging qualified individuals from entering public service. *Id.*

In determining whether the *Morgan* doctrine applies, the Court must first consider whether Littles-Floyd qualifies as a high-ranking government official. Courts generally have identified high-ranking officials to include individuals such as governors, agency heads, mayors, and corporation counsel, given the significant responsibilities they hold and the potential disruption their depositions may cause. *See Marisol A. v. Giuliani*, 1998 WL 132810, at *4 (S.D.N.Y. Mar. 23, 1998) (treating the Mayor of New York City as a high-ranking official); *see also Buono v. City of Newark*, 249 F.R.D. 469, 470–71 (D.N.J. 2008) (finding the Corporation Counsel of Newark to be high-ranking due to their leadership and advisory role in city governance).

Here, Littles-Floyd asserts that the Chief Administrator of the MVC unquestionably qualifies as a high-ranking government official protected by the *Morgan* doctrine. ECF No. 61-1 at 7. Littles-Floyd explains that as the head of the MVC, she: (1) oversees more than 2,500 State employees; (2) is a member of Governor Phil Murphy's Cabinet; and (3) has extensive powers and duties. *Id.*

Plaintiffs argue that Littles-Floyd does not qualify as a high-ranking government official because she allegedly oversees only a "directorate of a component of a government agency." ECF No. 73-22 at 19. Plaintiffs rely on *Florida v. United States*, where the court held that the Executive Associate Director of Immigration and Customs Enforcement (ICE) was not a high-ranking government official subject to the doctrine because, in his position, he oversaw only a portion of a government

7

agency and was not at the uppermost part of the government agency. 625 F. Supp. 3d 1242, 1247 (N.D. Fla. 2022).

The Court concludes that Littles-Floyd is a high-ranking government official and that *Florida v. United States* is easily distinguishable from the facts at hand. Littles-Floyd does not oversee only a component of an agency as the government official did in *Florida v. United States*; instead, she oversees and manages the *entire* agency. For this reason alone, the decision is inapposite, and Plaintiffs' reliance on it is misplaced. The Court likewise rejects Plaintiffs' argument that Littles-Floyd is not "at the uppermost part of a government agency." ECF 73-22 at 19 (citing *Florida*, 625 F. Supp. 3d. at 1247. Plaintiffs' position on this score is neither factually nor legally sound. Indeed, as Plaintiffs, themselves, admit, Littles-Floyd, as Chief Administrator, oversees thirteen individual Deputy Administrators and a Chief of Staff, who each in turn oversee an organizational unit of the MVC. ECF No. 73-22 at 19. These fourteen delegates would be more akin to the Executive Associate Director of ICE as discussed by the *Florida* court. *Florida,* 625 F. Supp. 3d at 1247. Moreover, Littles-Floyd serves as the Chair of Directors for the agency. ECF No. 73-22. Thus, it cannot be disputed that Littles-Floyd is the top official of the MVC, requiring application of the *Morgan* doctrine.

That, of course, is but step one of the analysis. The Court must next address whether "extraordinary circumstances" exist to warrant Littles-Floyd's deposition. *See Sensient Colors, Inc.*, 649 F. Supp. 2d at 316. They do not.

*Buono v. City of Newark* is instructive. 249 F.R.D. 469 (D.N.J. 2008). In *Buono*, then Magistrate Judge Shwartz outlined a five-part test to determine whether extraordinary circumstances exist to permit the deposition of a high-level government official. Specifically, a party seeking such a deposition must show: (1) that the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that could not be reasonably obtained from other sources; (3) the testimony is essential to that party's case; (4) the deposition would not significantly interfere with the ability of the official to perform his government duties; and (5) that the evidence sought is not available through any alternative source or less burdensome means. *Buono*, 249 F.R.D. at 471 n.2.

The application of this test is flexible. The court in *Sensient Colors*, for example, considered factors 1, 2, and 5 together, as these three are all directed to the key question of "whether the government official had personal involvement or knowledge relevant to the case." *Stevenson v. City of Newark*, 2024 WL 1526102, at *5 (D.N.J. Apr. 9, 2024) (citing *Sensient Colors*, 649 F. Supp. 2d at 322). Doing the same here, the Court finds that Littles-Floyd (1) did not have personal involvement in underlying events, (2) has no firsthand knowledge relevant to this case, and (3) the information sought by Plaintiffs can be obtained through other means. Nothing Plaintiffs argue changes this conclusion.

Plaintiffs' claim that Littles-Floyd's firsthand knowledge is based on her status as:

9

> (1) [A]n official whose signature block accompanied the November 18, 2024, Proposed Order of Denial and January 10, 2025 Formal Order of Denial issued by the BLS;
> (2) [T]he recipient of correspondence requesting the Orders of Denial be rescinded and documenting the extent to which employees of the BLS serving under her supervision retaliated against Plaintiff;
> (3) [T]he supervisor of the Defendants, and therefore, the individual who provided instructions to the Defendants concerning the issues in this case;
> (4) [A] long-time employee of the NJ MVC, and former Director of the Security, Investigations, and Internal Audit Unit, Littles-Floyd not only has direct knowledge of the disparate treatment of Plaintiff's tenant dealer applications, but of how a neutral system of licensure is to be conducted; and
> (5) [A] supervisor and overseer of the NJ MVC, Littles-Floyd's deposition testimony is essential to prove elements of Plaintiff's Section 1983 claim.

ECF No. 73-22 at 21-22.

The Court fails to see how the above constitutes first-hand knowledge of the facts of Plaintiffs' case or how the same information sought through Littles-Floyd's deposition could not be obtained through other (less disruptive) means. Plaintiffs' only remaining claim is that "Buchanan and Lefkowich retaliated against them for 'filing grievances with the [MVC] … and commencing the 2018 Action' by 'improperly denying licensing applications made in connection with properties owned by the Plaintiffs.'" ECF No. 61-1 at 9 (citing Compl. ¶¶ 87-88).

But Plaintiffs fail to connect any of *this* conduct to Littles-Floyd. Plaintiffs make no accusations as to Littles-Floyd's involvement with the denials at issue, nor allege that Littles-Floyd spoke with Buchanan or Lefkowich regarding the denials.

10

Littles-Floyd did not even so much as sign the denial forms. The mere presence of Littles-Floyd's typed name in the signature block on the forms is insufficient to demonstrate first-hand knowledge of or involvement in the matter to justify the taking of her deposition. Further, to the extent Plaintiffs seek information regarding MVC policy, there are ample other means to obtain such information without unduly burdening the Agency Chief with sitting for hours of deposition questioning. As such, Plaintiffs have failed to show that extraordinary circumstances exist to depose Littles-Floyd. Consequently, the Court grants the Third Parties' application to quash the Subpoena for the deposition of Littles-Floyd.

### ii.   MVC Employee Depositions

Plaintiffs also seek to depose ten non-party MVC Employees. The MVC Employees include the MVC BLS supervisor, a former supervisor for the MVC's Office of Legal and Regulatory Affairs, a former Director of Legislative Affairs for the NJ MVC, Compliance Processors, a Deputy Director at the MVC BLS, and both Junior and Senior Technicians in the Processing Unit of the BLS. ECF No. 73-22 at 11-13. Plaintiffs largely seek information pertaining to MVC policies and processing practices for license applications. *Id.*

Although the scope of discovery is broad under Rule 26(b)(1), it is "not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). "Such limitation may be particularly appropriate in the context of third-party subpoenas, as 'the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery.'" *Phillips v. Archdiocese of*

*Newark,* 2023 U.S. Dist. LEXIS 80184, at *9 (D.N.J. May 8, 2023) (quoting *Burgess v. Galloway, et al.*, 2021 U.S. Dist. LEXIS 195505, at *3 (D.N.J. Jan. 28, 2021)); *see also Chazanow v. Sussex Bank*, 2014 U.S. Dist. LEXIS 89279, at *2 (D.N.J. July 1, 2014) (granting a non-party greater protection from discovery).

As discussed briefly above, Plaintiffs' only surviving claim is for alleged retaliation against Buchanan and Lefkowich, neither of whom Plaintiffs have sought to depose at this point. Further, Plaintiffs maintain this action against Defendants in their individual capacities, not as employees of the MVC. And despite the limited nature of the suit, Plaintiffs seek to depose eleven individuals[4] on twenty-one identical topics, requesting information that spans over two decades. *See* ECF No. 61, Exs. B-K. But Plaintiffs have produced no evidence indicating that these MVC Employees either participated in Buchanan's or Lefkowich's denials of the licensing applications or were involved in processing said applications to a greater extent than routine intake of the applications.[5] Other employees subpoenaed by Plaintiffs were involved in overseeing Plaintiffs' license applications, but only after the period at issue, *i.e.*, once Buchanan and Lefkowich were "walled off."[6] *See* ECF Nos. 61-2 ¶¶ 6-

---

[4] The Court includes Littles-Floyd in this count.

[5] MVC Employees Tamika Day, Tavia Kelly, and Brittni Pizzarelli are technicians involved at the beginning of the dealer license application review process, before final decisions are made. *See* ECF No. 80 at 15-16. With respect to MVC Employees George Kinczel, Andre Bethea, and Ernest DiStefano, Plaintiffs broadly state that they were "were all involved in processing Plaintiff's tenant-dealer applications and played central roles in retaliating against Plaintiff for his refusal to accept a bribe." ECF No. 73-22 at 13. However, Plaintiffs fail to provide any support of same.

[6] This is true for MVC Employees Michael Rutherford and Gregory Focarino.

7. It is apparent that Plaintiffs do not know exactly whom they are seeking to depose or in what capacity.[7]

Plaintiffs have presented no justification for the breadth and number of the Subpoenas. Thus, the Court finds the Subpoenas to be unduly burdensome and unreasonably duplicative and cumulative. Fed. R. Civ. P. 26(b)(2)(C)(i), (iii). The Third Parties' Motion to Quash the Subpoenas as to the depositions of the MVC Employees is granted.

### iii. Production of MVC Documents

Plaintiffs' request for the production of certain documents fares no better, as the Court also denies this request and grants the Third Parties' Motion to Quash.

Plaintiffs have subpoenaed the Third Parties for documents belonging to the MVC. Plaintiffs do not dispute that the MVC has ownership of the documents, but instead argue that under Rule 34, legal ownership of a document is not determinative, with possession and control "sufficient to permit a request for production." ECF No. 73-22 at 23 (quoting *In re Sunrise Securities Litigation*, 109 B.R. 658, 661 (E.D.Pa. 1990)). Plaintiffs further note that Rule 34 requires parties "to produce and permit the requesting party or its representative to inspect, copy, test or sample . . . any designated documents or electronically stored information-including writings,

---

[7] Plaintiffs at various points in their brief identify Littles-Floyd, Christopher Hillman, and James Walker as Buchanan's and Lefkowich's direct supervisor and do not address this inconsistency. ECF No. 73-22 at 19, 12. Plaintiffs also mistakenly claim that Christopher Hillman has retired from the MVC despite his continued role as the MVC's Director of Legislative Affairs and Secretary of the MVC Board. ECF No. 80 at 16 n.9.

13

drawings, graphs, charts, photographs, sound recordings, images and other data or data compilations-stored in any medium from which can be obtained directly . . . ." ECF No. 73-22 at 23 (quoting Fed. R. Civ. P. 34(a)(1)(A)-(B)).

Third Parties reject the contention that because they have access to MVC documents, they are required to produce them. Third Parties cite to *Lowe v. District of Columbia*, in which the court denied the plaintiff's motion to compel the production of documents belonging to the District of Columbia Department of Health from employees of the agency, including its director. 250 F.R.D. 36, 39 (D.D.C. 2008). The court held that a government employee's "'control' of documents created in the ordinary course of the government's business is secondary to that of his employer; he cannot on his own initiative remove government files and provide them to a third party." *Id.* (citing *United States ex. rel. Touhy v. Ragen*, 340 U.S. 462, 467 (1951)). The court further found that the appropriate remedy was to subpoena the agency directly for the documents. *Id.*

Plaintiffs' argument misses the mark, and their reliance on *In re Sunrise Securities Litigation* is misplaced. In that case, the defendant sought the production of documents from multiple agencies. *In re Sunrise Securities Litigation*, 109 B.R. at 660. One such agency, the Federal Savings and Loan Insurance Corporation ("FSLIC"), argued that it could not produce the documents, despite its access to same, since "[f]ederal regulations establish that all bank examination reports, workpapers and internal agency memoranda are the exclusive property of the Federal Home Loan Bank Board ('FHLBB'), and only FHLBB has control over the documents." *Id.* at 661.

14

The court agreed with FSLIC's argument and found that: (1) "FSLIC has never had possession, custody or control over the documents in question . . ."; and (2) "FSLIC cannot be compelled to produce the documents pursuant to Rule 34(a)." *Id.* In that same opinion, the court granted the defendant's motion to compel with respect to a different agency, but only because the documents at issue were not subject to the same federal protection and were the property of the agency at issue. *Id.* at 663. Significantly, the defendant in that action sought to compel the agencies themselves, not employees of the agencies. This case thus provides no support for the blanket proposition that employees of a state agency have possession, custody, or control over agency documents for the purposes of Rule 34(a).

Instead, the Court agrees with the sentiments expressed by the *Lowe* court that government documents should not and cannot be compelled from government employees. *Lowe,* 250 F.R.D. at 39. Rather, it is proper to subpoena such documents from the government or agency itself. *Id.* Here, the documents sought by Plaintiffs belong to the MVC and are state property—*i.e.*, *not* property of the Third Parties. And because the MVC is the proper party, Plaintiffs should have directed their subpoena for documents to that entity. Indeed, Plaintiffs must have recognized this to some extent as they allege to have served a *subpoena duces tecum* on the MVC on May 15, 2025. This claim, although contested by the MVC and Third Parties,[8] proves that the

---

[8] Counsel for Third Parties, the OAG, asserts that on May 16, 2025, Plaintiffs e-mailed a subpoena (without a place, date, or time for production) to the Division of Law (not the MVC). ECF No. 80-1, Ex. A. Plaintiffs' counsel was informed that the subpoena should be served on the MVC directly. *Id.* Ex. B. Third Parties allege that no such subpoena has been served.

Subpoenas at issue are unreasonably cumulative, as Plaintiffs seek production of the same documents from twelve different parties. Accordingly, the Third Parties' Motion to Quash is granted in its entirety.

### B.   The Cross-Motion to Disqualify Counsel

Plaintiffs additionally cross-move to disqualify the OAG as counsel for the Third Parties. Plaintiffs' thin cross-motion is denied.

As a preliminary matter, the Court must point to the well-established principle that "because motions to disqualify can have such drastic consequences, courts disfavor such motions and grant them only when absolutely necessary." *Maldonado v. New Jersey*, 225 F.R.D. 120, 136-137 (D.N.J. 2004) (citing *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993)). Furthermore, "[a]lthough doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified." *Alexander*, 822 F. Supp. at 1114. Plaintiffs have not sustained their burden.

#### i.   Disqualification under RPC 1.9

Plaintiffs first contend that the OAG's continued representation of the Third Parties poses a successive conflict of interest under the American Bar Association's Model Rules of Professional Conduct ("RPC") 1.9(a)[9] meriting disqualification from

---

[9] Pursuant to the local rules of this Court, the RPCs, as modified and adopted by the New Jersey Supreme Court, govern the ethical conduct of attorneys in this Court. *Maldonado v. New Jersey*, 225 F.R.D. 120, 136-137 (D.N.J. 2004); *see also* Rule 6A, General Rules of the United States District Court for the District of New Jersey.

16

further proceedings. ECF No. 73-22 at 25. Plaintiffs take the position that the Third Parties' interests are adverse to those of the OAG's previous clients, Buchanan and Lefkowich, such that disqualification is required. To support this assertion, Plaintiffs claim that "if a Third Party might testify that the Defendants took deliberate actions to prevent Plaintiffs' tenants from obtaining dealers licenses, such testimony would be a clear conflict for the OAG," and note the possibility that Plaintiffs may later amend the Complaint to include the Third Parties as defendants. ECF No. 73-22 at 27. This is insufficient to establish the existence of any materially adverse interest, especially as the Subpoenas have been quashed in their entirety.

> RPC 1.9(a) states that
>
>> A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Plaintiffs cite to no evidence to support the theory that the Third Parties interests are "materially adverse" to the interests of Buchanan or Lefkowich and instead rely only on vague hypothetical testimony with no support from the record. Plaintiffs also fail to provide any precedent for the disqualification of a state attorney general from representing a state agency on any grounds, much less under RPC 1.9(a). Absent clear evidence of materially adverse interests, the Court will not order the disqualification of the OAG.

Moreover, although the provisions of RPC 1.10 set forth that the restrictions in RPC 1.9 apply both to individual attorneys and firms, the Court is satisfied that

17

different attorneys within the OAG were assigned to represent Defendants and the Third Parties. The Court further appreciates the OAG's reassurance that if a conflict were to arise in the future, it would take immediate action "to screen the affected attorneys and/or to retain outside counsel for the Third Parties." ECF No. 80 at 20.

### ii.  Disqualification under RPC 1.7

Plaintiffs also submit that the Attorney General Matthew Platkin's ("Platkin") continued role as a Director for the MVC likewise demonstrates a conflict of interest that warrants the OAG's disqualification from this action under RPC 1.7. *Id.* Platkin serves on the Board of Directors to the MVC pursuant to N.J. Stat. Ann. § 39:2A-12(a)(2). Plaintiffs argue that by holding this position while representing the Third Parties, Platkin has created a concurrent conflict of interest as set forth in RPC 1.7, requiring the disqualification of the entire OAG from future proceedings. ECF No. 73-22 at 29. The Court finds no merit in this argument.

Pursuant to RPC 1.7(a),

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

18

Here, as the Third Parties are not directly adverse in this action or in any other, RPC 1.7(a)(1) does not apply. *See* RPC 1.7 cmt. 6. Nor is there any indication that representation will be materially limited under RPC 1.7(a)(2).

The American Bar Association offers guidance that "[t]he critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." RPC 1.7 cmt. 8. However, "[t]he mere possibility of subsequent harm does not itself require disclosure and consent." *Id.* As discussed above, there is no evidence of adverse interest at this time such that any harm would likely result from continued representation. The Court gives little credence to Plaintiffs' claim that because Platkin maintains his statutorily prescribed role on the MVC Board of Directors, there exists a concurrent conflict of interest. ECF No. 73-22 at 29. If such were true, the OAG would be precluded from representing numerous New Jersey agencies and employees across the state. The Court will not set this precedent. For these reasons, Plaintiffs' cross-motion to disqualify is denied.

### IV. CONCLUSION AND ORDER

Having considered the papers submitted pursuant to Federal Rule of Civil Procedure 78 and for the reasons set forth above;

**IT IS** on this 19th day of November, 2025

**ORDERED** that the Third Parties' Motion to Quash (ECF No. 61) is GRANTED; and it is further

**ORDERED** that Plaintiffs' Cross-Motion to Compel (ECF No. 73) is DENIED; and it is further

**ORDERED** that the Clerk is to terminate ECF Nos. 61 and 73.

*s/ Justin T. Quinn*
JUSTIN T. QUINN
United States Magistrate Judge
